GITHENS, REXSAMER & COMPANY *v.* MURRAY *et al.*

Under the rule that notice to an agent is notice to his principal, merchants employing a broker to take orders for them for the sale of goods, which orders they fill or decline to fill according to their own discretion, are chargeable with actual notice received by such broker that a member of a partnership with whom they have previously dealt only through that broker has withdrawn from the firm, and that a new partner has been admitted ; and if after such notice the new partnership orders goods through the same broker, it is his duty to inform his principals of the change, and his omission to do so will not render the retired partner liable upon such orders, though the merchants fill them in ignorance on their part of the previous dissolution. It is within the scope of a broker's agency to ascertain the persons, whether members of a partnership or not, by whom goods are ordered of, or through, him; and his principals can have no right to bind any person who, to his knowledge, has neither ordered nor received their goods.
January 8, 1894.

Complaint on account. Before Judge BARTLETT. Bibb superior court. November term, 1892.

ANDERSON & ANDERSON, for plaintiffs. HARDEMAN, DAVIS & TURNER and S. A. REID, for defendants.

LUMPKIN, Justice.

Githens, Rexsamer & Co. brought, in a justice's court, two suits upon open accounts against Murray & Co., a firm composed of R. P. Murray and R. C. Keen. The cases were taken by appeal to the superior court, there consolidated, and resulted in a verdict for the plaintiffs for $37. Being dissatisfied with the amount of their recovery, they moved for a new trial, to the overruling of which they except. It affirmatively appears that the firm of Murray & Co. was actually dissolved on the 15th day of October, 1891, and that the verdict in the plaintiffs' favor covers the price of all goods sold to the firm

before the dissolution. It also appears that J. C. Edwards, the plaintiffs' broker, had actual knowledge of the dissolution about the time it occurred, and that there had never, prior to that time, been any dealings whatever between the plaintiffs and Murray & Co. except through this broker. The goods for which the plaintiffs further seek to hold R. C. Keen liable were sold and delivered upon orders placed through Edwards, after he had actual knowledge that Keen had retired from the firm. The only point of difference between the parties arises upon the question as to whether or not the knowledge of Edwards regarding the dissolution was binding upon the plaintiffs so as to prevent Keen from becoming liable to pay for goods sold after he had ceased in fact to be a member of the firm. The relation which Edwards sustained to the parties will appear from the following extract from his testimony, the truth of which was not disputed : " My duties with reference to Githens, Rexsamer & Co. were, that I sold their goods on a brokerage basis, for commission for everything that I sold. I had no special duties at all. I did not handle the goods at all ; I simply sold them. I did not pass upon the responsibility of the parties dealt with. I did not determine who were the members of any firm that I sold to. That was not a part of my business. I was expected, however, only to sell to good parties. To a certain extent, they relied upon my determination. They expected me to go to work and sell to a man that was good, and if they looked him up and found him reported badly, they would not ship the goods ; but I have never had them turn down any order I sent in. In these cases, Mr. Murray gave me the orders. I sold every one of them to him himself. I cannot name the date when I first knew of Mr. Keen's withdrawal. Mr. Taylor came to me and said he was going to buy them out, and asked me if it was a good scheme, and I told him that I thought

so; and about a week after that, he came to me and told me he had bought him [Keen] out, and I went on selling goods. I did not know how the firm was going to be styled, and I put it down as I did before."

It will thus be seen that Edwards knew, not only that the firm of Murray & Co. had been dissolved by the retirement of Keen, but that a new firm had been formed of which Taylor was a member. Whatever may have been the extent of Edwards' agency in representing the plaintiffs, we entertain no doubt that it was his duty to inform his principals of this change in the firm, and we are quite certain that his failure to do so would not render Keen, the retired partner, liable upon orders for goods given by Murray for the new partnership to the plaintiffs through this same broker, notwithstanding the plaintiffs had no personal knowledge of the dissolution, and filled these orders in entire ignorance of that fact. When a broker undertakes to sell goods for another, it is certainly within the scope of his agency to ascertain to whom he is selling. Indeed, it would be utter nonsense for any broker to undertake to sell the goods of other persons without knowing who were the purchasers; and of course, if he deals with a partnership, he must know who compose it. As to all goods sold by the plaintiffs to Murray's firm on orders placed by him through Edwards after October 15th, 1891, Edwards undoubtedly knew that the firm was then composed of Murray and Taylor, and that Keen no longer had any connection with it. This being so, there is no principle, either of law, justice or fair dealing, which would authorize the plaintiffs to hold Keen responsible for the value of goods ordered by the new firm. He had nothing to do with ordering them, did not receive them, and derived no benefit from their purchase. Moreover, he had never in any manner dealt with the plaintiffs other than through Edwards, acting

as their broker, and consequently did nothing to induce them to believe he had been, or continued to be, Murray's partner. All the facts were known to Edwards, and under the circumstances of this case, the plaintiffs were chargeable with the knowledge he had.

The plaintiffs having recovered from the firm of Murray & Co., composed of Murray and Keen, all they were entitled to recover against that firm; and there being no complaint on their part of any failure to recover as against Murray the balance of their accounts sued on, there was no error in overruling their motion for a new trial. In fact, the entire controversy was as to the liability of Keen, and the judgment rendered is for the full amount which he is either legally or morally bound to pay. *Judgment affirmed.*